This action is brought for a balance of $403,405.17, with interest from 26 July, 1913, alleged to be due the plaintiffs for the construction of the defendants' railroad between Mount Gilead and Charlotte. At May Term, 1914, of STANLY, by consent of parties, a special term for said county was asked of the Governor, who (141) was also requested to assign Shaw, J., to hold the same, with an agreement to waive a jury trial, the judge in trying said cause to sit *Page 188 
both as judge and jury. The Governor ordered said special term and assignedJudge Shaw to hold the same.
The cause was accordingly tried by his Honor acting as both judge and jury. The evidence was submitted in full, and upon the facts as found by him he entered judgment is favor of the plaintiff and against the defendants for the sum of $64,550.66, with interest from 9 September, 1913.
The printed record covers 811 pages and shows on every page the earnestness and ability with which counsel on both sides presented their contentions and the marked care and ability with which the learned and careful judge considered these contentions and arrived at his conclusions. Indeed, the care with which the judge has considered the cause has very much diminished the number of points requiring our consideration, and greatly lightened our labors as to these.
The plaintiffs' appeal presents but one exception, and that is that the judge disallowed their claim of $45,000 for "overhaul." On this proposition the court found that there was an ambiguity or contradiction in the contract, but that at the time the plaintiffs went over the proposed line of road, that it was to be a "no overhaul" contract, and that formed by Mr. J. M. Clark, one of the defendants' engineers, then at work on said road, that it was to be a "no overhaul" contract, and that from the execution of the contract up to the conclusion of the work the defendants construed the contract as a "no overhaul" contract; that in making all the monthly estimates and final estimate nothing was allowed plaintiffs for overhaul; that the plaintiffs a short time after the execution of the contract discovered this ambiguity in the contract, and in subleting the work informed the subcontractors that their contract with defendants was a "no overhaul" contract, and made all their contracts with them on that basis: that the plaintiffs subsequently made this statement to all their subcontractors; that plaintiffs accepted the monthly statements furnished by defendants, which contained no allowance for overhaul, till some time in the first part of 1913, without protesting against the omission of such allowance, though if the plaintiffs had been entitled to it, such allowance should have been credited in some of the monthly estimates prior to that time. The court further found as a fact that it was not intended by the parties that plaintiffs should be paid for overhaul as a separate unit (which is customary when such charge is provided for in the contract), and that the overhaul, if any, was included in the price of "46 cents per cubic yard for excavation and all necessary haul," and that there was no haul limit in the contract except that plaintiffs were not required to haul (142) across impassable barriers (such as trestles, bridges, and viaducts); and the court further found that in the construction of *Page 189 
this roadbed defendants did not require plaintiffs to haul across such barriers, and that both parties during the first five or six months of the contract treated the same as a "no haul limit" contract.
There was evidence that fully justified these findings of fact, and upon such findings of fact the court properly held, as a matter of law, that the defendants were not indebted to the plaintiffs in any amount by reason of their claim for overhaul; and we affirm the judgment on the plaintiffs' appeal.
The defendants' appeal presents only four exceptions:
1. The defendants contend that under the contract the measurement could be made only by measuring the excavations, unless there was a finding that this method was impracticable, and that then it could be done by measuring the fills.
The only question presented by this exception is as to the method of measurement, and upon the evidence the court was justified in finding that, taking into consideration the character of the soil and the intermixture of rock, there was no difference in the quantity, whether ascertained by measuring the excavation or the fills.
2. The next item is on account of changes in the roadbed after the contract was made, and involves two charges, one for a deduction of $7,000 and one for $27,000. The defendants, as appears from the record, asked for bids on a 1 per cent grade. The plaintiffs made a bid of 51 1/2 cents per cubic yard with 5 percent off if allowed to manipulate, that is, to modify the line as laid out with a view of making lighter cuts and lower fills. This was rejected. A profile was then submitted, showing a maximum grade of 1 3/10 per cent, reserving to the defendants the right to manipulate the grade. The plaintiffs thereupon bid 46 cents per cubic yard for the work. This was accepted. Afterwards the grade was changed to conform practically to the 1 per cent grade, and the two items of $7,000 and $27,000 are for alleged extra work in making these changes. The defendants contend that there could be no recovery for extra work because the contract provided for a supplemental contract, and there was no such contract. But the court found upon the evidence, especially upon the profile of 26 November and the letters following, that the chief engineer of the defendants told the plaintiffs to wait until the work was completed to ascertain the extra work. The evidence justified such finding, and as a matter of law the contractors were entitled to rely upon this instruction of the defendants' chief engineer.
3. A part of the $27,000 above stated, amounting to $18,000, is due to subcontractors. The court finds as a fact from the evidence in this case that the subcontractors "executed releases to the (143) plaintiffs and defendants for all claims which they might have for *Page 190 
work performed by them, and further found as a fact that these releases were executed by said contractors in order to comply with section 19 of the general contract requiring the contractor to furnish releases from subcontractors before receiving final payment for work done under the general contract, and that these releases were made under an arrangement between the defendants, the contractors and the subcontractors, by which is was agreed that the releases so signed by said subcontractors could only protect the railroad in making payment to the contractors, and if upon a final settlement it should appear that the subcontractors were entitled to receive additional compensation for extra work done by them on account of changes made in the alignment or grade of the railroad, that then the subcontractors should be entitled to receive from the contractors their proportionate part of any amounts paid the contractors by the railroad on account thereof, notwithstanding they had executed such releases."
4. The last contention of the defendants is that under section 31 of the contract the plaintiffs cannot recover until all claims and liens for labor, material, and actions for damages on account of alleged negligence, all growing out of the construction of the road by plaintiffs and existing at the institution of this action, had been discharged by the defendants, and that they should be allowed to deduct from any sum found due the plaintiffs any sum which the defendants may be called upon to pay on account of such matters.
The court found as a fact that it was agreed between the plaintiffs and the president of the road that in addition to the releases by the subcontractors as above stated, the plaintiffs should give a bond of $40,000 to protect the defendants against any claims coming under said section 31, and thereupon the plaintiffs would not be required to comply further with said section 31 of the contract.
This action is far a large amount, but all the points in controversy have been admirably presented by the diligence of counsel both on the trial below and in this Court. After full and careful consideration of all the exceptions, we find that the findings of fact by the learned judge below are not only sustained by some evidence, but by the preponderance of evidence, and upon the facts found by him, by consent of parties in lieu of a jury trial, his conclusions of law are correct.
In the defendants' appeal, as in the appeal by the plaintiffs, we find
No error. *Page 191 
(144)